James T. Shell, Jr., Madison, Madison & Fuller and Edward L. Gladney, all of Bastrop, for appellants.

Hawthorne & Files, of Bastrop, for appellee.

**BROCK, State Bank Com'r, v. CITIZENS STATE BANK & TRUST CO.**

**Opposition BASTROP BANK & TRUST CO. (two cases).**

**Nos. 5343, 5344.**

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

* Rehearing granted April 30, 1937.

TALIAFERRO, Judge.

The Citizens State Bank & Trust Company of Bastrop, La., was closed by the state bank commissioner on April 12, 1933, and thereafter its affairs were placed in liquidation by order of the Fourth district court of Louisiana. At the time of its closing and for some years prior thereto, under appointment of said court, concurred in by the United States Veterans' Bureau, it was acting as the financial tutor of the minors, Douglas Riser and Ora Brandon,

heirs and beneficiaries of deceased ex-service men. When the bank failed, there was on deposit with it as tutor for Douglas Riser the sum of $639.69 and for Ora Brandon, the sum of $1,724.57.

When the bank accepted said tutorships, it executed with a representative of the Veterans' Bureau written agreements to control and regulate the handling, investment, and disbursement of the funds to be intrusted to it. These agreements are identical in stipulations. We here copy sections of the one in the Brandon minor case pertinent to the present discussion:

"5. The functions of the Bank as tutor shall consist solely of receiving and investing the funds paid to it as tutor for Douglas Riser, after paying out of these funds the amounts hereinafter stated. * * *

"7. It is understood that the present estate of Douglas Riser, affected by this agreement consists of an accumulation of approximately $1,300.00, and $20.00 per month until such time as the minor arrives at the age of 18 years.

"8. The funds received by the Bank as tutor for Douglas Riser shall be invested in accordance with laws of Louisiana covering the subject.

"9. The balance remaining after the investment prescribed in paragraph 8 shall have been made, shall be placed in a Savings Account whereon the Bank agrees to pay its regular rate of interest, said interest to be added to the principal at each regular interest date. The income from the investment prescribed in paragraph 8 shall likewise be added to the Savings Account when received.

"10. Whenever the Savings Account provided by paragraph 9 exceeds $500.00, the Bank shall purchase for the account of Douglas Riser investments in accordance with the laws of Louisiana on the subject.

"11. Out of the funds received on account of the minor, Douglas Riser, the Bank agrees to pay to Edna Riser Beasley by check on the 10th of each month $10.00, to be used for defraying the expenses of board, lodging, laundry, clothing and spending money of the minor, of which expenses no itemized or other account need be kept."

The Bastrop Bank & Trust Company was appointed financial tutor of the minors after the former tutor failed. On March 17, 1936, the state bank commissioner filed a provisional account of his administration of the defunct bank's affairs wherein he proposed to pay to ordinary creditors (depositors) a dividend of 20 per cent. The claims of the minors were classed as ordinary liabilities. Their present tutor opposed the proposed distribution in so far as the interests of its wards were concerned. It takes the position that, under the state and federal law applicable thereto and the agreement with the United States Veterans' Bureau, these minors have a preferred right and privilege upon the former tutor's assets to the full amount due them.

After joinder of issue, Ora Brandon was judicially emancipated, and by amended petition was substituted as opponent in lieu of the Bastrop Bank & Trust Company. She amends the original opposition filed in her behalf by demanding that her first tutor be penalized the statutory 5 per cent. because of its failure to invest her money in sound securities, as required by the laws of Louisiana and the agreement aforesaid. She admits accepting without prejudice $415.45 from the liquidator since the filing of the account, which leaves due her a balance of $1,309.12 in principal. Both oppositions were dismissed and the demands therein contained rejected. Opponents have appealed.

Both oppositions were tried on an agreed comprehensive statement of facts. Questions of law only are involved.

In each instance the failing bank was paid as tutor a lump sum for the account of the wards, and monthly thereafter was paid $20 for the accounts, from each of which payments $10 was paid to the cotutor for the minor's support, etc. Special and separate accounts in the bank's savings department were carried in each case, and the proceeds of checks from the government from time to time were credited thereto. The funds, however, were not in fact segregated, but became commingled with the bank's general funds.

Opponents contend, firstly, that full payment of the amount due them, respectively, by their defaulting tutor is secured by the privilege established by Act No. 63 of 1926, and, secondly, by the provisions of the World War Veterans' Act, as amended by the Act of Congress of August 12, 1935. U.S.C.A. title 38, § 454a. We think the 1926 act applicable to the facts of this case, and opponents' position thereon well founded. Section 1 is as follows: "Be it enacted by the Legislature of Louisiana, That when any bank receives as agent

548

(whether as agent of another bank or of any person, firm or corporation) for collection and remittance or delivery to its principal and not for deposit any bill, note, check, order, draft, bond, receipt, bill of lading, or other evidence of indebtedness, or other instrument, and collects or realizes any money on the same, and has not deposited same to the credit of said principal, the principal shall have a privilege on all of the property and assets of said agent bank for the amount so collected or realized by said agent bank."

We are not left to conjecture the true relation between the bank, as tutor, and the minors, nor is there uncertainty surrounding its duties with respect to disposition of the money intrusted to it by the government for their account. The agreement, above quoted from, a concomitant of the tutorship trust, clearly and definitely reveals the nature of said relations and the character of the duties imposed by it, on the one hand, and assumed by the tutor on the other. Its duties, as defined by the agreement, "shall consist solely of receiving and investing the funds paid to it," etc. It received for collection in its capacity as agent the government checks and was bound to invest same in its capacity of tutor.

■ The privilege established by section 1 of the act arises and attaches to the bank's assets only when it, as agent, receives for "collection and remittance or delivery to its principal and not for deposit any bill, note, check," etc., and collects the same. The act further states, "and has not deposited same (the proceeds) to the credit of said principal." Of course, this refers to an authorized deposit to the principal's account and not to one unauthorized. It is essential to defeat the privilege that the deposit be made with the principal's approval. In re Liquidation of Hibernia Bank & Trust Company, 181 La. 335, 159 So. 576.

■ In the present case the tutor bank was not warranted in any sense of the word in depositing the minors' funds in the manner disclosed, and by so doing their legal rights were unaffected. The proceeds of the checks were to be "delivered" to them by the collecting bank, acting as tutor of the minors, by investment in sound securities, as required by law and the agreements. For this purpose said proceeds were earmarked and their identity therefor was not destroyed simply by allowing them to be commingled with the bank's general funds. We do not think it would be argued that the privilege would not attach in this case if a third person had been tutor of the minors and had intrusted the checks to the bank for collection and investment for the wards' accounts. The fact that the bank acted in a dual capacity does not affect the situation, unless it be to strengthen the minors' position. The combined fiduciary relation as agent and tutor existed so long as the funds were not "delivered" by investment for the minors' accounts, and, concurrent with these relations, the privilege coexisted. The privilege only ceases under the act when "delivery" of the proceeds has been made or deposited or paid out by authority of the principal.

It was held in the Hibernia Bank & Trust Company Case, supra, that the privilege attached, the facts being as follows: the Hibernia Bank & Trust Company received from Jones county, in the state of Mississippi, a check to pay certain of its bonds and coupons payable at the bank, and, after collecting the county's check, the bank opened a bond and coupon account on which was credited the proceeds. The bank failed before paying any bonds or coupons. The court held that the proceeds had not been "deposited" with the principal's consent, within the meaning of the 1926 act. This opinion in part is overruled in Re Hibernia Bank & Trust Company, 185 La. 448, 169 So. 464. In this last case the court held that, where the proceeds of the collected checks, etc., were to be delivered to a third person and not to the principal, the privilege did not arise. Neither of these decisions is contrary to the views we express herein. In this connection, counsel for Douglas Riser in brief advances this cogent argument, the reasoning of which we adopt:

"From a reading of the contract and agreement in its entirety, and especially the above quoted provisions, it will be noted that the bank was instructed and, in fact, agreed to collect the checks and immediately, if the minor's funds amounted to as much as $500.00, purchase securities with the proceeds. This, in effect, amounted to an agreement to take the checks for collection and remittance or delivery to the principal within the meaning of Act 63 of 1926. The fact that the proceeds of the checks when collected were to be remitted or delivered in the form of

securities should, we submit, make no difference in the case—this for the reason that an item placed with a bank for collection with instructions to remit the proceeds in the form of an exchange would clearly come within the terms and provisions of the Act and give to the principal a privilege on all of the assets and property of the bank for the amount of the collection, there being, we submit, no difference between the case where the bank is instructed to remit in securities and in the case where it is instructed to remit in an exchange or other form of indebtedness."

We are of the opinion that opponents have a privilege on the bank's assets, as provided in Act No. 63 of 1926, and that they should be paid in full the balance due them. It is unnecessary to decide the contention that the federal statute confers on them a preference right against the bank's assets.

■ Article 347 of the Civil Code imposes upon a tutor the duty of investing, in the name of the minor, the revenues which exceed the wards' expenses when they amount to $500. In default of so doing, the tutor is chargeable with legal interest on the amount not invested. In the present case the expenses of the minor Ora Brandon were definitely fixed at $10 per month. The balance of her funds may appropriately be classed as revenues. Carter v. Aetna Casualty & Surety Company, 165 La. 478, 115 So. 662.

On March 5, 1931, the tutor bank received check from the government for the minor Brandon for $1,464.32. From this amount there was paid by authority $40, leaving a balance due of $1,424.32, which should have been invested. Had this been done, no other investments would have been mandatory, as the additional funds in its hands at no time amounted to $500. Therefore the tutor should be charged with 5 per centum per annum interest on $1,424.32 from March 5, 1931, until paid, less a credit of $415.45 as of May 15, 1936, and also less a credit of $30.25 paid on interest account on October 15, 1931. On March 15, 1929, the tutor bank received a check from the government for the Riser minor for an amount in excess of $639.69. Enforcement of the penalty is not demanded by the tutor of this minor.

For the reasons herein assigned, the judgments appealed from are hereby reversed, annulled, and set aside; and there is now judgment in favor of opponent Ora Brandon, and against J. S. Brock, state bank commissioner and ex-officio liquidator of the Citizens State Bank & Trust Company of Bastrop, La., recognizing her claim against said liquidator, on which there is now due a balance of $1,309.12, with 5 per centum per annum interest on the amounts and for the periods hereinabove set out, to be secured by privilege on and against the assets and property of said Bank in liquidation, and entitled to be paid said amounts in full from funds in the hands of the Liquidator, less $30.25 interest heretofore paid.

It is further ordered, adjudged, and decreed that opponent, the Bastrop State Bank & Trust Company, as tutor of Douglas Riser, do have and recover judgment against said liquidator, recognizing the claim of said minor for $639.69, to be secured by privilege upon the property and assets of the Citizens State Bank & Trust Company in liquidation, and entitled to be paid in full therefrom. And the provisional account of said liquidator is ordered amended and recast to comply with the decrees herein rendered.

It is further ordered that the liquidator pay all costs of these proceedings.